# SETTLEMENT AGREEMENT

## I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice, the Office of Personnel Management (OPM) (collectively the "United States"); and Anthem Insurance Companies, Inc. ("Anthem"); (hereafter referred to as "the Parties"), through their authorized representatives.

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. Anthem is an Indiana corporation, which, along with its predecessors, successors, subsidiaries and affiliates (collectively known as "AICI"), serves (and has served) as an administrator of the Federal Employee Health Benefit Program, both as a subcontractor to the Blue Cross and Blue Shield Association with respect to the FEP Service Benefit Program and as a contractor with the Office of Personnel Management with respect to HMO type plans, in Indiana, Kentucky and Ohio (collectively, "FEP Contracts"). This settlement addresses allegations related to AICI's FEP Contracts from the years 1992 through 2002. The United States initiated an investigation of certain allegations of misconduct by AICI based, in part, upon a *qui tam* action filed in the United States District Court for the Southern District of Ohio, captioned *United States ex rel. Andrew M. Garner III v. Anthem Insurance Companies, Inc., et al*, hereinafter referred to as the Civil Action.

B. The conduct alleged in the Civil Action during the period from 1992-2002, which could give rise to civil claims against AICI under the False Claims Act, 31 U.S.C. §§3729-33, other federal statutes and/or common law doctrines, includes: (1) overcharging OPM with respect to costs of

{00172496.DOC/2}
Settlement Agreement Between
United States and Anthem Insurance Companies, Inc

-1-

services provided by a related entity, AdminaStar PrintMail, by including impermissible profit; and (2) failure to pass on the full amount of OPM's proportionate share of rebates received by its affiliate Anthem Prescription Management ("APM") on prescription drugs sold to FEP members, all of the above hereinafter referred to as the "Covered Conduct."

C.  To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below. This Agreement is not an admission by AICI of liability for the above-referenced actions.

### III. TERMS AND CONDITIONS

A.  AICI agrees to pay to the United States $1.5 million (the "Settlement Amount"). The foregoing payment shall be made as follows:

    1.  AICI agrees to pay the full Settlement Amount, plus interest from June 1, 2005, to the United States by electronic funds transfer pursuant to written instructions to be provided by the United States. AICI agrees to make this electronic funds transfer no later than the date provided in Paragraph Q below.

    2.  Subject to the exceptions in Paragraph B below, in consideration of the obligations of AICI in this Agreement, conditioned upon AICI's full payment of the Settlement Amount, plus interest, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release AICI together with its current and former parent corporations, each of its direct and indirect subsidiaries, brother or sister corporations, divisions, current or former owners, officers, directors, affiliates, and the successors and assigns of any of them from any civil or administrative monetary claim the United States has or


may have for the Covered Conduct, including claims under the False Claims Act, 31 U.S.C. §§3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. §1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§3801-3812; or the common law theories of payment by mistake, unjust enrichment, breach of contract, and fraud. No individuals are released by this Agreement, except as otherwise may have been provided for herein.

3.      In consideration of the obligations of AICI set forth in this Agreement, conditioned upon AICI's payment in full of the Settlement Amount, plus interest, OPM, after consideration of the factors identified in 48 C.F.R. §§9.406-1 and 9.406-2, agrees that it will not debar or suspend (as set forth in 48 C.F.R. Subparts 9.4) AICI, each of its predecessors, direct and indirect subsidiaries, divisions, current or former owners and affiliates, and the successors and assigns of any of them, from contracting with the United States based upon the Covered Conduct, except as otherwise specifically reserved below. OPM further agrees that any and all applications, bids and/or proposals received by OPM from AICI, its present and future subsidiaries, related business entities, agents or any entity with which AICI may merge or acquire, will be considered in accordance with the Federal Acquisition Regulation ("FAR"), 48 C.F.R. Chapter 1 and any other applicable procurement statutes or regulations. Any such application, bid and/or proposal submitted by AICI shall be considered using the same criteria applied to other contractors. The Parties recognize that OPM has a responsibility to contract and maintain business relationships with individuals and entities that engage in sound management and

business practices.

B. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including AICI and relator) are the following claims of the United States:

1. Any civil, criminal or administrative liability arising under Title 26, U. S. Code (Internal Revenue);

2. Any criminal liability;

3. Except as explicitly stated in paragraph III.A(3) of this Agreement, any administrative liability; including mandatory exclusion from Federal health care programs;

4. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

5. Any liability based upon such obligations as are created by this Agreement;

6. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

7. Any liability for failure to deliver goods or services due;

8. Except as explicitly stated in paragraph III.A of this Agreement, any liability of individuals, including officers and employees.

C. AICI waives and will not assert any defenses AICI may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or

{00172496.DOC/2}
Settlement Agreement Between
United States and Anthem Insurance Companies, Inc

-4-

under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

D.  AICI fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which AICI has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

E.  AICI agrees to the following:

    1.  <u>Unallowable Costs Defined:</u> that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. §31.205-47, and in the regulations and official program directives promulgated there under) incurred by or on behalf of AICI, its present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "unallowable costs" on government contracts and under the OPM FEP Program:

        (a) the matters covered by this Agreement,

        (b) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement,

        (c) AICI's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees).

(d) the negotiation and performance of this Agreement,

(e) the payment AICI makes to the United States pursuant to this Agreement and any payments that AICI may make to relator, including costs and attorneys fees.

(All costs described or set forth in this Paragraph are hereafter, "unallowable costs").

2. Future Treatment of Unallowable Costs: These unallowable costs shall be separately determined and accounted for in non-reimbursable cost centers by AICI, and AICI shall not charge such unallowable costs directly or indirectly to any contracts with the United States or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by AICI or any of its subsidiaries or affiliates to the FEP Program.

3. Treatment of Unallowable Costs Previously Submitted for Payment: AICI further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable FEHBP fiscal agents, any unallowable costs (as defined in Paragraph E.1 above) included in payments previously sought from the United States, or any State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by AICI or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. AICI agrees that the United States, at a minimum, shall be entitled to recoup from AICI any overpayment plus applicable interest and penalties as a result

of the inclusion of such unallowable costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by AICI or any of its subsidiaries or affiliates on the effect of inclusion of unallowable costs (as defined in Paragraph E.1 above) on AICI or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

4. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine AICI's books and records to determine that no unallowable costs have been claimed in accordance with the provisions of this Paragraph E.

F. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in this Agreement.

G. Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

H. AICI represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

I. This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement will be the United States District Court for the Southern District of Ohio.

J. This Agreement constitutes the complete agreement between the Parties. This

{00172496.DOC/2}
Settlement Agreement Between
United States and Anthem Insurance Companies, Inc

-7-

Agreement may not be amended except by written consent of the Parties.

K. Upon receipt of the payment described in Paragraph A.1 above, the United States shall promptly sign and file in the Civil Action a Notice of Dismissal of the Civil Action pursuant to the terms of the Agreement, in the form attached as Exhibit I.

L. The individuals signing this Agreement on behalf of AICI represent and warrant that they are authorized by AICI to execute this Agreement. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

M. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

N. This Agreement is binding on AICI's successors, transferees, heirs, and assigns.

O. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

P. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

Q. The Effective Date of this Agreement shall be defined as one business day after all parties have signed this Agreement. Thereafter, AICI shall make a payment of the Settlement Amount in full, plus interest as accrued in the account, within two business days of the United States District Court Order confirming the United States dismissal of the Civil Action. AICI agrees that it will cooperate and support the Government in its defense of any challenge to the fairness, reasonableness, or adequacy of this Settlement.

THE UNITED STATES OF AMERICA

DATED: 8/1/05      BY: _____
                        STANLEY E. ALDERSON
                        Trial Attorney
                        Commercial Branch
                        Civil Division
                        United States Department of Justice

THE OFFICE OF PERSONNEL MANAGEMENT

DATED: _____   BY: _____
                             FRANK D. TITUS
                             Assistant Director for Insurance
                             Service Programs

have signed this Agreement or, in the event that the relator challenges the dismissal of this action, one business day after the approval of the dismissal by the United States District Court for the Southern District of Ohio. Thereafter, AICI shall make a payment of the Settlement Amount in full, plus interest as accrued in the account, within two business days of the United States District Court Order confirming the United States dismissal of the Civil Action. AICI agrees that it will cooperate and support the Government in its defense of any challenge to the fairness, reasonableness, or adequacy of this Settlement.

THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
STANLEY E. ALDERSON
Trial Attorney
Commercial Branch
Civil Division
United States Department of Justice

THE OFFICE OF PERSONNEL MANAGEMENT

DATED: 7/21/05 BY: _[signature]_
FRANK D. TITUS
Assistant Director for Insurance
Service Programs

Settlement Agreement Between
United States and Anthem Insurance Companies, Inc
-9-

<u>Anthem Insurance Companies, Inc. – DEFENDANT</u>

DATED: August 1, 2005   BY: _____
                              KEITH R. FALLER
                              Executive Vice President

DATED: August 2, 2005   BY: _____
                              BARBARA A. DUNCOMBE, Esq.
                              Sebaly, Shillito + Dyer, A Legal Professional Assn.
                              Counsel to Anthem Insurance Companies, Inc.

{00172496.DOC/2}
Settlement Agreement Between
United States and Anthem Insurance Companies, Inc