# FEDERAL EMPLOYEES HEALTH BENEFITS PROGRAM

# 1996-A

*CONTRACT AMENDMENT*

***for Selected Plans***

(TD: 12/18/95)

Exhibit A

# CONTRACT FOR FEDERAL EMPLOYEES HEALTH BENEFITS

CONTRACT NO: CS 1039
EFFECTIVE: January 1, 1960

AMENDMENT NO: 1996-A
EFFECTIVE: 1/1/96

BETWEEN: THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
*(hereinafter also called OPM, the Agency, or the Government)*

AND

CONTRACTOR: Blue Cross and Blue Shield Association Service Benefit Plan
*(hereinafter also called the Carrier)*

*Address:* 1310 G Street, N.W., Suite 800
Washington, DC 20005

The FEHB contract is hereby amended to include the following benefit exclusion:

Abortions, except where the life of the mother would be endangered if the fetus were carried to term, or when the pregnancy is the result of an act of rape or incest.

FOR THE CARRIER

Alan P. Spielman
Name of Signer *(Type or print)*

Senior Vice President, Federal Programs
Title of Signer

Alan P. Spielman
Signature of Person Authorized to Execute Contract

12/27/95
Date Signed

FOR THE GOVERNMENT

Lucretia F. Myers
Name of Contracting Officer *(Type or print)*

Assistant Director for Insurance Programs
Title of Contracting Officer

Lucretia F. Myers
Signature of Contracting Officer

December 28, 1995
Date Signed

(TD: 12/18/95)

# AMENDMENT TO CONTRACT CS 1039

CONTRACT NO: CS 1039
EFFECTIVE: January 1, 1960

AMENDMENT NO: 1996-B
EFFECTIVE: 1/1/96

BETWEEN: THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
*hereinafter called the OPM, the Agency, or the Government.*

AND

CONTRACTOR: Blue Cross and Blue Shield Association
Service Benefit Plan
*hereinafter also called the Carrier.*

Address: 1310 G Street, N.W., Suite 900
Washington, DC 20005

Section 4.8 is added to the Contract. Notwithstanding the provisions stated in the certified brochure text at Appendix A, or any other portion of the Contract, the following provisions apply during the 1996 contract year.

SECTION 4.8
PRESCRIPTION DRUG BENEFITS (JANUARY 1996)

(a) The Carrier shall waive during the effective periods in paragraph (e) the deductible and coinsurance for a 21 day prescription filled at a Preferred Retail pharmacy when the Mail Service Prescription Drug Program vendor is unable to fill the prescription within the service standards. This waiver of the deductible and coinsurance shall be in effect for 14 calendar days after notice to the enrollee as described in paragraph (c) below. Use of the waiver will not reduce the total annual deductible required in the certified brochure text at appendix A.



(b) For the purposes of applying the provisions in this Section, the service standards are:

(1) When a prescription order is placed by phone or facsimile, the prescription order shall be processed within two business days so the enrollee may expect to receive the medication within seven calendar days.

(2) When a prescription order is placed by mail, the prescription order shall be processed within five business days from the date of receipt so the enrollee may expect to receive the medication within 14 calendar days.

(c) (1) Through May 31, 1996, when the Mail Service Prescription Drug Program vendor may not be able to ensure that the enrollee will receive the medications within the 7 calendar day standard outlined in (b)(1) or the 14 calendar day standard in (b)(2) above, the Carrier shall provide the enrollee with a written notice to be received within the service standard timeframes. This written notice shall advise the enrollee that any applicable deductible and coinsurance will be waived for a 21 day supply of the medication when filled at a Preferred Retail pharmacy and shall provide instructions to enable the enrollee to use the waiver. The notice shall advise the enrollee when the waiver will expire.

(2) Effective June 1, 1996, when the Mail Service Prescription Drug Program vendor may not be able to ensure that the enrollee will receive the medications within the 7 calendar day standard outlined in (b)(1) or the 14 calendar day standard in (b)(2) above, the Carrier shall provide the enrollee a written or telephone notice no later than 2 business days prior to the end of the service standard timeframes. This notice shall advise the enrollee that any applicable deductible and coinsurance will be waived for a 21 day supply of the medication when filled at a Preferred Retail pharmacy and shall provide instructions to enable the enrollee to use the waiver. Preferred Retail pharmacies will receive appropriate waiver information to allow the member to obtain the medication. The notice shall advise the enrollee when the waiver will expire.

(d) The Carrier may use next day delivery service at no additional cost to the enrollee in order to meet the service standards in (b)(1) and (2).



(e) (1) The provisions described in paragraphs (a) through (d) shall initially be effective on February 9, 1996, and shall terminate by mutual agreement of OPM and the Carrier. The parties agree that it is appropriate to terminate the special benefits when essentially all prescriptions meet the service standards described in paragraph (b)(1) and (2) of this section.

(2) The special provisions described in paragraphs (a) through (d) of this section shall be reinstated and become effective automatically when less than 96 percent of the prescriptions are filled within the service standards described in either paragraph (b)(1) or (2) for 7 consecutive business days. The reinstated special provisions shall terminate when for 7 consecutive business days 96 percent or more of the prescriptions are filled within the service standards described in paragraph (b)(1) and (2) of this section.

(f) Upon request of a member, the Carrier shall reimburse an enrollee who purchased his or her prescription, or the prescription of an eligible family member, at a Preferred Retail pharmacy between January 1, 1996, and a future date agreed upon by OPM and the Carrier, because the Mail Order Prescription Drug Service vendor did not fill the prescription within the timeframes specified in the standards. The reimbursement is limited to the enrollee's or member's out of pocket costs associated with the purchase of a prescription at a Preferred Retail pharmacy.

| FOR THE CARRIER | FOR THE GOVERNMENT |
|---|---|
| Alan P. Spielman | Lucretia F. Myers |
| Name and Title of Signer *(Type or print)* | Name of Contracting Officer *(Type or print)* |
| Senior Vice President, Federal Programs | Assistant Director for Insurance Programs |
| Title of Signer | Title of Contracting Officer |
| Alan P. Spielman | Abby L. Block for |
| Signature of Person Authorized to Execute Contract | Signature of Contracting Officer |
| 5/9/96 | 5/9/96 |
| Date Signed | Date Signed |



# AMENDMENT TO CONTRACT CS 1039

CONTRACT NO: CS 1039
EFFECTIVE: January 1, 1960

AMENDMENT NO: 1996-C
EFFECTIVE: 1/1/96

BETWEEN: THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
*hereinafter called the OPM, the Agency, or the Government.*

AND

CONTRACTOR: Blue Cross and Blue Shield Association
Service Benefit Plan
*hereinafter also called the Carrier.*

Address: 1310 G Street, N.W., Suite 900
Washington, DC 20005

Section 4.9 is added to the Contract. Notwithstanding the provisions stated in the certified brochure text at Appendix A, or any other provision of the Contract, the 1996 brochure is amended to provide special consideration to Standard Option Members for whom Medicare Part B is the primary payer for other medical services and who are confined to a long term care facility.

SECTION 4.9
PRESCRIPTION DRUG BENEFITS (JANUARY 1996)

OPM and the Carrier agree that the following language shall be incorporated into a brochure Addendum amending the benefits stated in the certified brochure text at Appendix A of the Contract for 1996:

> When Medicare Part B is a Member's primary payer for other medical services and a Member provides a written statement or other proof of confinement in a nursing home directly to the Plan, during the period of confinement the coinsurance under Standard Option will be waived for prescriptions filled at a Preferred Retail pharmacy, including a long term care network pharmacy. If the prescriptions for such Members



are filled at a non-Preferred pharmacy, during the period of confinement Standard Option Members will pay a coinsurance of 20% of billed charges.

The Addendum to the brochure outlining the new provisions set forth in this amendment shall be mailed by the Carrier to the enrollees.

| FOR THE CARRIER | FOR THE GOVERNMENT |
| --- | --- |
| Alan P. Spielman | Lucretia F. Myers |
| Name and Title of Signer *(Type or print)* | Name of Contracting Officer *(Type or print)* |
| Senior Vice President, Federal Programs | Assistant Director for Insurance Programs |
| Title of Signer | Title of Contracting Officer |
| Alan P. Spielman | [signature] |
| Signature of Person Authorized to Execute Contract | Signature of Contracting Officer |
| 5/9/96 | 5/9/96 |
| Date Signed | Date Signed |



# AMENDMENT TO CONTRACT CS 1039

CONTRACT NO: CS 1039
EFFECTIVE: January 1, 1960

AMENDMENT NO: 1996-D
EFFECTIVE: 1/1/96

BETWEEN: THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
*hereinafter called the OPM, the Agency, or the Government.*

AND

CONTRACTOR: Blue Cross and Blue Shield Association
Service Benefit Plan
*hereinafter also called the Carrier.*

Address: 1310 G Street, N.W., Suite 900
Washington, DC 20005

Section 4.10 is added to the Contract to amend the definition of "Non-participating Provider Allowance."

SECTION 4.10
NON-PARTICIPATING PROVIDER ALLOWANCE (NPA)

(a) Notwithstanding the provisions stated in the certified brochure text at page 48 of Appendix A, or any other provision of the Contract, for purposes of determining the Non-participating Provider Allowance (NPA) solely for those Non-participating providers which are not facilities, the following definitions shall apply for the 1996 contract year:

**Non-participating Provider Allowance (NPA) for Non-participating Providers Other Than Facilities** -- An allowance equal to the greater of (1) the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the Billed charge if there is no equivalent Medicare fee schedule amount) or (2) 80% of the 1996 Usual, Customary and Reasonable (UCR) amount for the service or supply in the geographic area in which it was performed or obtained.



**Usual, Customary and Reasonable (UCR)--**

Profile: Local Plans determine reimbursement for covered services by applying a profile. The profile is developed from the actual charges by providers in their area. The profiles are generally updated annually; however, local exceptions may apply.

Accepted allowance: Local Plans may determine reimbursement for covered expenses based on an accepted allowance instead of a profile. Accepted allowances are based on what Participating providers are accepting as payment in full in the Local Plan area.

All other terms set forth in the definition of NPA shall apply to claims for covered services provided by Non-participating providers other than facilities.

(b) The Carrier shall implement the necessary claims processing system and other administrative changes by July 8, 1996, to accommodate this amendment. Any affected 1996 claims for covered services processed prior to July 8, 1996, shall be identified and retroactively reprocessed. Adjustments shall be sent to Enrollees by October 31, 1996. The Enrollee's adjustment for covered services shall be determined by readjudicating the claims using the definition of "Non-participating Provider Allowance" set forth in paragraph (a) of this section.

(c) The Carrier shall readjudicate at the time of reconsideration any affected claim that is submitted to the Plan for reconsideration prior to the effective date of the system and administrative changes.

(d) The Explanation of Benefits (EOB) for each Non-participating provider claim that is based on 80% of the Usual, Customary and Reasonable allowance shall explain that the Member's out of pocket costs were capped on this payment and shall provide the Member a comparison with a payment of the same claim using the Medicare participating fee schedule or 60 % of the Billed charge if there is no equivalent Medicare fee schedule amount.



(e) The Addendum to the brochure outlining the new provisions set forth in this amendment shall be mailed by the Carrier to the enrollees.

FOR THE CARRIER

Alan P. Spielman
Name and Title of Signer *(Type or print)*

Senior Vice President, Federal Programs
Title of Signer

Alan P. Spielman
Signature of Person Authorized to Execute Contract

5/9/96
Date Signed

FOR THE GOVERNMENT

Lucretia F. Myers
Name of Contracting Officer *(Type or print)*

Assistant Director for Insurance Programs
Title of Contracting Officer

[illegible signature] for
Signature of Contracting Officer

5/9/96
Date Signed



NOV 20 1995

# FEDERAL EMPLOYEES HEALTH BENEFITS PROGRAM

*STANDARD CONTRACT*

*FOR*

*FEE-FOR-SERVICE CARRIERS*

# 1996

# CONTRACT FOR FEDERAL EMPLOYEES HEALTH BENEFITS

CONTRACT NO: CS 1039
EFFECTIVE: January 1, 1960

AMENDMENT NO: 1996
EFFECTIVE: 1/1/96

BETWEEN: THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
*hereinafter called the OPM, the Agency, or the Government.*

AND

CONTRACTOR: Blue Cross and Blue Shield Association Service Benefit Plan
*hereinafter also called the Carrier.*

Address: 1310 G Street, N.W., Suite 800
Washington, DC 20005

In consideration of payment by the Agency of subscription charges set forth in Appendix B, the Carrier agrees to perform all of the services set forth in this contract.

FOR THE CARRIER

Alan P. Spielman
Name and Title of Signer *(Type or print)*

Senior Vice President, Federal Programs
Title of Signer

Alan P. Spielman
Signature of Person
Authorized to Execute Contract

12/27/95
Date Signed

FOR THE GOVERNMENT

Lucretia F. Myers
Name of Contracting Officer *(Type or print)*

Assistant Director for Insurance Programs
Title of Contracting Officer

Lucretia F. Myers
Signature of Contracting Officer

December 28, 1995
Date Signed

# TABLE OF CONTENTS

This is an ***experience-rated price-redeterminable contract for the fee-for-service plan Carrier*** and consists of the cover page, the table of contents and the provisions, clauses and appendices as included in PARTS 1 through 6.

*PART I - GENERAL PROVISIONS*


1.1 DEFINITIONS OF FEHB TERMS
1.2 ENTIRE CONTRACT
1.3 ORDER OF PRECEDENCE
1.4 INCORPORATION OF LAWS AND REGULATIONS
1.5 RECORDS AND INFORMATION TO BE FURNISHED BY OPM
1.6 CONFIDENTIALITY OF RECORDS (FEHBAR)
1.7 STATISTICS AND SPECIAL STUDIES
1.8 NOTICE
1.9 FEHB QUALITY ASSURANCE
1.10 NOTICE OF SIGNIFICANT EVENTS (FEHBAR)
1.11 FEHB INSPECTION (FEHBAR)
1.12 CORRECTION OF DEFICIENCIES
1.13 INFORMATION AND MARKETING MATERIALS
1.14 MISLEADING, DECEPTIVE OR UNFAIR ADVERTISING (FEHBAR)
1.15 RENEWAL AND WITHDRAWAL OF APPROVAL (FEHBAR)
1.16 SUBCONTRACTS (FEHBAR)
1.17 NOVATION AGREEMENT (FEHBAR)
1.18 AGREEMENT TO RECOGNIZE CARRIER'S CHANGE OF NAME (FEHBAR)
1.19 UNDERWRITER


*PART II - BENEFITS*


2.1 ENROLLMENT ELIGIBILITY AND EVIDENCE OF ENROLLMENT
2.2 BENEFITS PROVIDED
2.3 PAYMENT OF BENEFITS AND PROVISION OF SERVICES AND SUPPLIES
2.4 TERMINATION OF COVERAGE AND CONVERSION PRIVILEGES
2.5 SUBROGATION
2.6 COORDINATION OF BENEFITS (FEHBAR)
2.7 DEBARMENT AND OTHER SANCTIONS
2.8 FILING HEALTH BENEFIT CLAIMS/COURT REVIEW OF DISPUTED CLAIMS
2.9 CLAIMS PROCESSING
2.10 CALCULATION OF COST SHARING PROVISIONS


*PART III - PAYMENTS, CHARGES AND ACCOUNTING*


3.1 PAYMENTS (FEHBAR)
3.2 ACCOUNTING AND ALLOWABLE COST (FEHBAR)
3.3 SPECIAL RESERVE
3.4 INVESTMENT INCOME (FEHBAR)
3.5 NON-COMMINGLING OF FUNDS (FEHBAR)
3.6 UNCASHED CHECKS
3.7 SERVICE CHARGE
3.8 CONTRACTOR RECORDS RETENTION (FEHBAR)
3.9 APPROVAL FOR THE ASSIGNMENT OF CLAIMS (FEHBAR)


*PART IV - SPECIAL PROVISIONS*


4.1 ALTERATIONS IN CONTRACT

## *PART V - STANDARD CLAUSES*

This contract shall include all of the following standard clauses required by the Federal Acquisition Regulation (FAR) or Federal Employees Health Benefits Acquisition Regulation (FEHBAR).

5.1 DEFINITIONS
5.2 [RESERVED]
5.3 GRATUITIES
5.4 COVENANT AGAINST CONTINGENT FEES
5.5 ANTI-KICKBACK PROCEDURES
5.6 [RESERVED]
5.7 AUDIT AND RECORDS-NEGOTIATION
5.8 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA
5.9 [RESERVED]
5.10 SUBCONTRACTOR COST OR PRICING DATA
5.11 [RESERVED]
5.12 FACILITIES CAPITAL COST OF MONEY
5.13 WAIVER OF FACILITIES CAPITAL COST OF MONEY
5.14 UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN OWNED BUSINESS CONCERNS
5.15 [RESERVED]
5.16 [RESERVED]
5.17 CONVICT LABOR
5.18 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT-OVERTIME COMPENSATION-GENERAL
5.19 EQUAL OPPORTUNITY
5.20 EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS
5.21 NOTIFICATION OF VISA DENIAL
5.22 AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS
5.23 AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS
5.24 CLEAN AIR AND WATER
5.25 DRUG FREE WORKPLACE
5.26 [RESERVED]
5.27 FEDERAL, STATE, AND LOCAL TAXES (NONCOMPETITIVE CONTRACT)
5.28 TAXES-CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO
5.29 TAXES-FOREIGN FIXED PRICE CONTRACTS
5.30 COST ACCOUNTING STANDARDS
5.31 ADMINISTRATION OF COST ACCOUNTING STANDARDS
5.32 DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES
5.33 DISCOUNTS FOR PROMPT PAYMENT
5.34 [RESERVED]
5.35 ASSIGNMENT OF CLAIMS
5.36 DISPUTES
5.37 NOTICE OF INTENT TO DISALLOW COSTS
5.38 CHANGES-FIXED PRICE--ALTERNATE I
5.39 COMPETITION IN SUBCONTRACTING
5.40 GOVERNMENT PROPERTY (FIXED PRICE CONTRACTS)
5.41 LIMITATION OF LIABILITY--SERVICES
5.42 PREFERENCE FOR U.S. FLAG AIR CARRIERS
5.43 GOVERNMENT SUPPLY SOURCES
5.44 AUTHORIZED DEVIATIONS IN CLAUSES
5.45 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS
5.46 REQUIREMENT FOR CERTIFICATION OF PROCUREMENT INTEGRITY--MODIFICATION
5.47 PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED OR PROPOSED FOR DEBARMENT
5.48 BANKRUPTCY
5.49 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE)
5.50 DEFAULT





5.51 TERMINATION OF DEFINED BENEFIT PENSION PLANS

5.52 REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS OTHER THAN PENSIONS (PRB)

5.53 NOTICE TO THE GOVERNMENT OF LABOR DISPUTES

5.54 PENALTIES FOR UNALLOWABLE COSTS

*PART VI – APPENDICES*

A- CERTIFIED BROCHURE TEXT

B- SCHEDULE OF RATES, CHARGES AND LIMITATIONS

C- CONTRACT ADMINISTRATION DATA

D- a) FEHBP SUPPLEMENTAL LITERATURE GUIDELINES; b) RULES GOVERNING ADVERTISEMENTS OF ACCIDENT AND SICKNESS INSURANCE WITH INTERPRETIVE GUIDELINES, MODEL REGULATION SERVICE-JULY 1989, NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS

E- ORDER OF BENEFIT DETERMINATION RULES, GROUP COORDINATION OF BENEFITS REGULATION, MODEL REGULATION SERVICE-JULY 1989, NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS



