# FEDERAL EMPLOYEES HEALTH BENEFITS PROGRAM

*STANDARD CONTRACT*

*FOR*

EXPERIENCE-RATED
COMPREHENSIVE MEDICAL PLAN CARRIERS

# 1996

Exhibit B

(TD: 11/17/95)      (E-P)

# CONTRACT FOR FEDERAL EMPLOYEES HEALTH BENEFITS

CONTRACT NO:                                    AMENDMENT NO:
EFFECTIVE:                                      EFFECTIVE:


BETWEEN:  THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
*hereinafter called the OPM, the Agency, or the Government*

AND


CONTRACTOR:_____
*hereinafter also called the Carrier.*

  Address:


In consideration of payment by the Agency of subscription charges set forth in Appendix B, the Carrier agrees to perform all of the services set forth in this contract.


FOR THE CARRIER                                 FOR THE GOVERNMENT

---

Name of Signer *(Type or print)*               Name of Contracting Officer *(Type or print)*

---

Title of Signer                                 Title of Contracting Officer

---

Signature of Person                             Signature of Contracting Officer
Authorized to Execute Contract

---

Date Signed                                     Date Signed


(TD: 11/17/95)                                                              (E-P)

*PART IV - SPECIAL PROVISIONS*

4.1    ALTERATIONS IN CONTRACT

*PART V - STANDARD CLAUSES*

This contract shall include all of the following standard clauses required by the Federal Acquisition Regulation (FAR) or Federal Employees Health Benefits Acquisition Regulation (FEHBAR).

| | |
|---|---|
| 5.1 | DEFINITIONS |
| 5.2 | [RESERVED] |
| 5.3 | GRATUITIES |
| 5.4 | COVENANT AGAINST CONTINGENT FEES |
| 5.5 | ANTI-KICKBACK PROCEDURES |
| 5.6 | [RESERVED] |
| 5.7 | AUDIT AND RECORDS-NEGOTIATION |
| 5.8 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA |
| 5.9 | [RESERVED] |
| 5.10 | SUBCONTRACTOR COST OR PRICING DATA |
| 5.11 | [RESERVED] |
| 5.12 | FACILITIES CAPITAL COST OF MONEY |
| 5.13 | WAIVER OF FACILITIES CAPITAL COST OF MONEY |
| 5.14 | UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN OWNED BUSINESS CONCERNS |
| 5.15 | [RESERVED] |
| 5.16 | [RESERVED] |
| 5.17 | CONVICT LABOR |
| 5.18 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT-OVERTIME COMPENSATION-GENERAL |
| 5.19 | EQUAL OPPORTUNITY |
| 5.20 | EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS |
| 5.21 | NOTIFICATION OF VISA DENIAL |
| 5.22 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS |
| 5.23 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS |
| 5.24 | CLEAN AIR AND WATER |
| 5.25 | DRUG FREE WORKPLACE |
| 5.26 | [RESERVED] |
| 5.27 | FEDERAL, STATE, AND LOCAL TAXES (NONCOMPETITIVE CONTRACT) |
| 5.28 | TAXES-CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO |
| 5.29 | TAXES-FOREIGN FIXED PRICE CONTRACTS |
| 5.30 | COST ACCOUNTING STANDARDS |
| 5.31 | ADMINISTRATION OF COST ACCOUNTING STANDARDS |
| 5.32 | DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES |
| 5.33 | DISCOUNTS FOR PROMPT PAYMENT |
| 5.34 | [RESERVED] |
| 5.35 | ASSIGNMENT OF CLAIMS |
| 5.36 | DISPUTES |
| 5.37 | NOTICE OF INTENT TO DISALLOW COSTS |
| 5.38 | CHANGES-FIXED PRICE--ALTERNATE I |
| 5.39 | COMPETITION IN SUBCONTRACTING |
| 5.40 | GOVERNMENT PROPERTY (FIXED PRICE CONTRACTS) |
| 5.41 | LIMITATION OF LIABILITY--SERVICES |
| 5.42 | PREFERENCE FOR U.S. FLAG AIR CARRIERS |
| 5.43 | GOVERNMENT SUPPLY SOURCES |
| 5.44 | AUTHORIZED DEVIATIONS IN CLAUSES |
| 5.45 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS |
| 5.46 | REQUIREMENT FOR CERTIFICATION OF PROCUREMENT INTEGRITY--MODIFICATION |
| 5.47 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED OR PROPOSED FOR DEBARMENT |
| 5.48 | BANKRUPTCY |
| 5.49 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) |
| 5.50 | DEFAULT |
| 5.51 | TERMINATION OF DEFINED BENEFIT PENSION PLANS |
| 5.52 | REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS OTHER THAN PENSIONS (PRB) |
| 5.53 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES |

# TABLE OF CONTENTS

This is an experience-rated contract for the Comprehensive Medical Plan Carrier and consists of the cover page, the table of contents and the provisions, clauses and appendices as included in PARTS 1 through 6.

*PART I - GENERAL PROVISIONS*

1.1  DEFINITIONS OF FEHB TERMS
1.2  ENTIRE CONTRACT
1.3  ORDER OF PRECEDENCE
1.4  INCORPORATION OF LAWS AND REGULATIONS
1.5  RECORDS AND INFORMATION TO BE FURNISHED BY OPM
1.6  CONFIDENTIALITY OF RECORDS (FEHBAR)
1.7  STATISTICS AND SPECIAL STUDIES
1.8  NOTICE
1.9  FEHB QUALITY ASSURANCE
1.10 NOTICE OF SIGNIFICANT EVENTS (FEHBAR)
1.11 FEHB INSPECTION (FEHBAR)
1.12 CORRECTION OF DEFICIENCIES
1.13 INFORMATION AND MARKETING MATERIALS
1.14 MISLEADING, DECEPTIVE OR UNFAIR ADVERTISING (FEHBAR)
1.15 RENEWAL AND WITHDRAWAL OF APPROVAL (FEHBAR)
1.16 SUBCONTRACTS (FEHBAR)
1.17 NOVATION AGREEMENT (FEHBAR)
1.18 AGREEMENT TO RECOGNIZE CARRIER'S CHANGE OF NAME (FEHBAR)

*PART II - BENEFITS*

2.1  ENROLLMENT ELIGIBILITY AND EVIDENCE OF ENROLLMENT
2.2  BENEFITS PROVIDED
2.3  PAYMENT OF BENEFITS AND PROVISION OF SERVICES AND SUPPLIES
2.4  TERMINATION OF COVERAGE AND CONVERSION PRIVILEGES
2.5  SUBROGATION
2.6  COORDINATION OF BENEFITS (FEHBAR)
2.7  DEBARMENT AND OTHER SANCTIONS
2.8  FILING HEALTH BENEFIT CLAIMS/COURT REVIEW OF DISPUTED CLAIMS
2.9  PROTECTION OF MEMBERS AGAINST PROVIDER CLAIMS
2.10 INDEPENDENT LABORATORIES
2.11 CLAIMS PROCESSING
2.12 CALCULATION OF COST SHARING PROVISIONS

*PART III - PAYMENTS, CHARGES AND ACCOUNTING*

3.1  PAYMENTS (FEHBAR)
3.2  ACCOUNTING AND ALLOWABLE COST (FEHBAR)
3.3  SPECIAL RESERVE
3.4  INVESTMENT INCOME (FEHBAR)
3.5  NON-COMMINGLING OF FUNDS (FEHBAR)
3.6  UNCASHED CHECKS
3.7  SERVICE CHARGE
3.8  CONTRACTOR RECORDS RETENTION (FEHBAR)
3.9  APPROVAL FOR THE ASSIGNMENT OF CLAIMS (FEHBAR)

5.54 PENALTIES FOR UNALLOWABLE COSTS

*PART VI -- APPENDICES*

A- CERTIFIED BROCHURE TEXT
B- SCHEDULE OF RATES, CHARGES AND LIMITATIONS
C- CONTRACT ADMINISTRATION DATA
D- (a) FEHBP SUPPLEMENTAL LITERATURE GUIDELINES; (b) RULES GOVERNING ADVERTISEMENTS OF ACCIDENT AND SICKNESS INSURANCE WITH INTERPRETIVE GUIDELINES, MODEL REGULATION SERVICE-JULY 1989, NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS
E- ORDER OF BENEFIT DETERMINATION RULES, GROUP COORDINATION OF BENEFITS REGULATION, MODEL REGULATION SERVICE-JULY 1989, NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS

PART I - GENERAL PROVISIONS

SECTION 1.1
DEFINITIONS OF FEHB TERMS (JAN 1996)

For purpose of this contract, the following definitions apply:

FEHBP: Federal Employees Health Benefits Program.

Enrollee: The Federal employee, annuitant, former spouse, temporarily-covered former Federal employee or dependent, enrolled under this contract.

Member: The Enrollee and/or an eligible dependent for benefit purposes, and sometimes referred to as subscriber.

Act: The Federal Employees Health Benefits Act, as amended; chapter 89 of title 5, United States Code.

Regulations: (1) The Federal Employees Health Benefits Regulations; Part 890, Title 5, Code of Federal Regulations, and (2) Chapters 1 and 16 of Title 48, Code of Federal Regulations.

Benefits: Covered services or payment for covered services set forth in Appendix A, to which Members are entitled to the extent provided by this contract.

Carrier: As defined by chapter 89 of title 5, United States Code, and may be used interchangeably with the term Contractor.

SECTION 1.2
ENTIRE CONTRACT (JAN 1991)

(a) This document as described in the *Table of Contents* constitutes the entire contract between the parties. No oral statement of any person shall modify or otherwise affect the terms, conditions, or specifications stated in this contract. All modifications to the contract must be made in writing by the duly authorized Contracting Officer.

(b) All statements concerning coverage or benefits made by OPM, the Carrier or by any individual covered under this policy shall be deemed representations and not warranties. No such statement shall convey or void any coverage, increase or reduce any benefits under this policy or be used in the prosecution of or defense of a claim under this policy unless it is contained in writing and a copy of the instrument containing the statement is or has been furnished to the Member or to the person making the claim.

SECTION 1.3
ORDER OF PRECEDENCE (JAN 1996)

Any inconsistency in this contract shall be resolved by giving precedence in the following descending order: The Act, the regulations in part 890, title 5, Code of Federal Regulations, the regulations in chapters 1 and 16, title 48, Code of Federal Regulations, and this contract.

SECTION 1.4
INCORPORATION OF LAWS AND REGULATIONS (JAN 1996)

(a) The applicable provisions of (1) chapter 89 of title 5, United States Code; (2) OPM's regulations as contained in part 890, title 5, Code of Federal Regulations; and (3) chapters 1 and 16 of title 48, Code of Federal Regulations constitute a part of this contract as if fully set forth herein, and the other provisions of this contract shall be construed so as to comply therewith.

(b) If the Regulations are changed in a manner which would increase the Carrier's liability under this contract, the change will be made effective for the contract period subsequent to the period in which the change is promulgated and, if the change is promulgated in November or December, the change will not be effective until the second contract year following the year in which the change is promulgated; unless (i) The Carrier

agrees to an earlier date or (ii) the change is ordered by the Contracting Officer pursuant to the *Changes--Fixed Price--ALTERNATE I* clause of the contract.

SECTION 1.5
RECORDS AND INFORMATION TO BE FURNISHED BY OPM (JAN 1996)

(a) The OPM shall maintain or cause to be maintained records from which may be determined the names and social security numbers of all Enrollees. Such information shall be furnished to the Carrier by the OPM, or other agencies of the Federal Government, at such times and in such form and detail as will enable the Carrier to maintain a currently accurate record of all Enrollees.

(b) The Carrier shall be entitled to rely on information furnished to it, as provided in subsection (a) of this Section, and the OPM agrees that any liabilities incurred under this contract in reliance upon such information shall be a valid charge against the contract. Errors or delays in keeping or reporting data relative to coverage shall not invalidate coverage which would otherwise be validly in force or shall not continue coverage which would otherwise be terminated but, upon discovery of such errors or delays, an equitable adjustment shall be made.

(c) Neither clerical error (whether by the OPM, by any other Government agency, or by the Carrier) in keeping any records pertaining to coverage under this contract, nor delays in making entries thereon, nor failure to make or account for any deduction of enrollment charges, shall invalidate coverage otherwise validly in force or continue coverage otherwise validly terminated, but upon discovery of such error or delay or failure an equitable adjustment of premiums shall be made. If any relevant facts pertaining to any individual to whom coverage under this contract relates shall be found to have been misstated, and if such misstatement affects the existence or the amount or extent of coverage, the true facts shall be used in determining whether coverage is in force under the terms of this contract and in what amount or to what extent. Any claim payments made by the Carrier before any such adjustment or determination shall be a valid charge against this contract.

(d) OPM shall provide the Carrier, not less often than semi-annually, the number of Enrollees enrolled under the contract by payroll office. The Carrier shall at least annually reconcile its enrollment records with those provided by the Government.

SECTION 1.6
CONFIDENTIALITY OF RECORDS (JAN 1991) (FEHBAR 1652.224-70)

(a) The Carrier shall use the personal data on employees and annuitants that is provided by agencies and OPM, including social security numbers, for only those routine uses stipulated for the data and published annually in the *Federal Register* as part of OPM's notice of systems of records.

(b) The Carrier shall also hold all medical records, and information relating thereto, of Federal subscribers confidential except as follows:

(1) As may be reasonably necessary for the administration of this contract;
(2) As authorized by the patient or his or her guardian;
(3) As disclosure is necessary to permit Government officials having authority to investigate and prosecute alleged civil or criminal actions;
(4) As necessary to audit the contract;
(5) As necessary to carry out the coordination of benefit provisions of this contract; and
(6) For bona fide medical research or educational purposes. Release of information for medical research or educational purposes shall be limited to aggregated information of a statistical nature that does not identify any individual by name, social security number, or any other identifier unique to an individual.

(c) If the Carrier uses medical records for the administration of the contract, or for bona fide research or educational purposes, it shall so state in the Plan's brochure.

SECTION 1.7
STATISTICS AND SPECIAL STUDIES (JAN 1996)

(a) The Carrier shall maintain or cause to be maintained statistical records of its operations under the contract and shall furnish OPM, in the form prescribed by the Contracting Officer, the statistical reports reasonably necessary for the OPM to carry out its functions under Section 1308 and Chapter 89 of title 5, United States Code.

(b) The Carrier shall furnish such other reasonable statistical data and reports of special studies as the Contracting Officer may from time to time request for the purpose of carrying out its functions under Chapter 89 of title 5, United States Code.

(c) The Carrier shall furnish the routine reports in the number of copies to the addresses specified in Appendix C, *Contract Administration Data*.

SECTION 1.8
NOTICE (JAN 1991)

Where the contract requires that notice be given to the other party, such notice shall be given in writing to the address specified in Appendix C, *Contract Administration Data*.

SECTION 1.9
FEHB QUALITY ASSURANCE (JAN 1996)

(a) The Carrier shall develop and apply a quality assurance program specifying procedures for assuring contract quality. At a minimum the program must include procedures to address:

(1) Accuracy of Payments.

(i) Processing Accuracy - the number of FEHB claims processed accurately divided by the total number of FEHB claims processed for the given time period, expressed as a percentage.

REQUIRED STANDARD: An average of 95 percent of FEHB claims must be processed accurately.

(ii) COB Processing - the Carrier must demonstrate that a statistically valid sampling technique is routinely used to identify FEHB claims prior to or after processing that require(d) coordination of benefits (COB) with a third party payer. As an alternative, the Carrier may provide evidence that it pursues all claims for COB.

(2) Timeliness of Payments to Members or Providers

(i) Average Processing Time (All FEHB Claims) - the average number of working days from the date an FEHB claim is received to the date it is adjudicated (paid, denied or a request for further information is sent out), for the given time period, expressed as a cumulative percentage.

REQUIRED STANDARD:

(A) An average of 60 percent of FEHB claims received over the given time period are adjudicated within 20 working days (28 calendar days).

(B) An average of 80 percent of FEHB claims received over the given time period are adjudicated within 30 working days (42 calendar days).

(C) An average of 95 percent of FEHB claims received over the given time period are adjudicated within 60 working days (84 calendar days).

(3) Quality of Services and Responsiveness to Members

(i) Member Inquiries - the number of working days taken to respond to an FEHB member's written inquiry, expressed as a cumulative percentage.

REQUIRED STANDARD:

(A) An average of 60 percent of FEHB member written inquiries are responded to within 10 working days (14 calendar days).

(B) An average of 90 percent of FEHB member written inquiries are responded to within 30 working days (42 calendar days).

(ii) Telephone Access - the Carrier shall report on the following statistics concerning telephone access to the member services department (or its equivalent) for the given time period. <u>Except that</u>, if the Carrier does not have a computerized phone system, report results of periodic surveys on telephone access.

(A) Telephone Waiting Time - the average

number of seconds elapsed before a member's telephone call is connected to a Carrier representative.

REQUIRED STANDARD: On average, no more than 1.5 minutes elapse before a member's telephone call is connected to a Carrier representative.

(B) Telephone Blockage Rate - the percentage of time that callers receive a busy signal when calling the Carrier.

REQUIRED STANDARD: On average, callers receive a busy signal no more than 10 percent of the time.

(C) Telephone Abandonment Rate - the number of calls attempted but not completed (presumably because callers tired of waiting to be connected to a Carrier representative) divided by the total number of calls attempted (both completed and not completed), expressed as a percentage.

REQUIRED STANDARD: On average, no more than 8 percent of calls are abandoned.

(4) Responsiveness to FEHB Member Requests for Reconsideration.

REQUIRED STANDARD: For 100 percent of written FEHB disputed claim requests received for the given time period, within 30 days after receipt by the Carrier, the Carrier must affirm the denial in writing to the FEHB member, pay the claim, provide the service, or request additional information reasonably necessary to make a determination.

(5) Quality Assurance Plan - the Carrier must demonstrate that a statistically valid sampling technique is routinely used prior to or after processing to randomly sample FEHB claims against Carrier quality assurance/fraud and abuse prevention standards.

(6) Physician Credentialing - the Carrier must demonstrate that it requires the following credential checks of all of its physicians, both during the initial hiring process and during periodic re-credentialing. As an alternative, the Carrier shall demonstrate that the following credential checks are performed by a secondary source, such as a hospital.

(A) Verification of medical school graduation records.

(B) Routine check with local and/or state medical societies and/or boards.

(C) Routine check of the Department of Health and Human Services (DHHS) list of debarred providers.

(D) Routine check of the National Practitioner Data Bank.

(7) Appointments - All prepaid carriers must meet the following standards for the given time period. Except that, if this information is not routinely collected, report results from periodic surveys.

REQUIRED STANDARD:

(i) Urgent appointments are available, on average, within 24 hours of an authorized request for one.

(ii) Routine appointments are available, on average, within 1 month of an authorized request for one.

(iii) Average office waiting times - on average, members who arrive on time for a scheduled appointment wait no more than 30 minutes before they are seen by the provider of the medical service.

*(NOTE: For the purpose of this standard (7), a simplified classification system is used in which all appointments are classified as either emergency, urgent or routine. Emergency appointments must be seen immediately to prevent health deterioration. Urgent appointments are those for the sudden, acute onset of symptoms that must be seen within 1 (one) day to prevent health deterioration. All other appointments are considered routine.)*

(b) The Carrier shall keep complete records of its quality assurance procedures and the results of their implementation and make them available to the Government as determined by OPM. If the Carrier cannot separate FEHB claims from all other claims, the Carrier shall report compliance based on all claims and indicate this on the report.

(c) The Contracting Officer may order the correction of a deficiency in the Carrier's quality assurance program. The Carrier shall take the necessary action promptly to implement the Contracting Officer's order. If the Contracting Officer orders a modification of the Carrier's quality assurance program pursuant to this paragraph (c) after the contract

year has begun, the costs incurred to correct the deficiency may be excluded from the administrative expenses -- for that contract year -- that are subject to the administrative expenses limitation specified at Appendix B; *provided* the Carrier demonstrates that the correction of the deficiency significantly increases the Carrier's liability under this contract.

(d) Assessing Member Satisfaction. In addition to any other means of surveying Plan members that the Carrier may develop, the Carrier shall participate in a uniform customer satisfaction survey as directed by OPM, to permit comparisons across FEHB carriers. The Carrier shall take into account the published results of the uniform survey, or other results as directed by OPM, in identifying areas for improvement as part of the Carrier's quality assurance program.

SECTION 1.10
NOTICE OF SIGNIFICANT EVENTS (JAN 1991) (FEHBAR 1652.222-70)

(a) The Carrier agrees to notify the Contracting Officer of any Significant Event within ten (10) working days after the Carrier becomes aware of it. As used in this section, a Significant Event is any occurrence or anticipated occurrence that might reasonably be expected to have a material effect upon the Carrier's ability to meet its obligations under this contract, including, but not limited to, any of the following:

(1) Disposal of major assets;

(2) Loss of 15% or more of the Carrier's overall membership;

(3) Termination or modification of any contract or subcontract if such termination or modification might have a material effect on the Carrier's obligations under this contract;

(4) Addition or termination of provider agreements;

(5) Any changes in underwriters, reinsurers or participating plans;

(6) The imposition of, or notice of the intent to impose, a receivership, conservatorship, or special regulatory monitoring;

(7) The withdrawal of, or notice of intent to withdraw State licensing, HHS qualification, or any other status under Federal or State law;

(8) Default on a loan or other financial obligation;

(9) Any actual or potential labor dispute that delays or threatens to delay timely performance or substantially impairs the functioning of the Carrier's facilities or facilities used by the Carrier in the performance of the contract;

(10) Any change in its charter, constitution, or by-laws which affects any provision of this contract or the Carrier's participation in the Federal Employees Health Benefits Program;

(11) Any significant changes in policies and procedures or interpretations of the contract or brochure which would affect the benefits available under the contract or the costs charged to the contract;

(12) Any fraud, embezzlement or misappropriation of FEHB funds; or

(13) Any written exceptions, reservations or qualifications expressed by the independent accounting firm (which ascribes to the standards of the American Institute of Certified Public Accountants) contracted with by the Carrier to provide an opinion on its annual financial statements.

(b) Upon learning of a Significant Event OPM may institute action, in proportion to the seriousness of the event, to protect the interest of Members, including, but not limited to--

(1) Directing the Carrier to take corrective action;

(2) Suspending new enrollments under this contract;

(3) Advising Enrollees of the Significant Event and providing them an opportunity to transfer to another plan;

(4) Withholding payment of subscription income or restricting access to the Carrier's Letter of Credit account;

(5) Terminating the enrollment of those Enrollees who, in the judgment of OPM, would be adversely affected by he Significant Event; or

(6) Terminating this contract pursuant to

Section 1.15, *Renewal and Withdrawal of Approval.*

(c) Prior to taking action as described in paragraph (b) of this clause, the OPM will notify the Carrier and offer an opportunity to respond.

(d) The Carrier shall insert this clause in any subcontract or subcontract modification if both the amount of the subcontract or modification charged to the FEHBP (or, in the case of a community-rated carrier, applicable to the FEHBP) exceeds $100,000 and the amount of the subcontract or modification to be charged to the FEHBP (or, in the case of a community-rated carrier, applicable to the FEHBP) exceeds 25 percent of the total cost of the subcontract or modification. If the Carrier is a CMP, it shall also insert this clause in all provider agreements over $25,000. If the Carrier is not a CMP, it shall also insert this clause in the contract with its underwriter, if any. The Carrier shall substitute "Contractor" or other appropriate reference for the term "Carrier."

SECTION 1.11
FEHB INSPECTION (JAN 1991) (FEHBAR 1652.246-70)

(a) The Government or its agent has the right to inspect and evaluate the work performed or being performed under the contract, and the premises where the work is being performed, at all reasonable times and in a manner that will not unduly delay the work. If the Government or its agent performs inspection or evaluation on the premises of the Carrier or a subcontractor, the Carrier shall furnish and require the subcontractor to furnish all reasonable facilities and assistance for the safe and convenient performance of these duties.

(b) The Carrier shall insert this clause in all subcontracts for underwriting and administrative services and shall substitute "Contractor" or other appropriate reference for the term "Carrier."

SECTION 1.12
CORRECTION OF DEFICIENCIES (JAN 1996)

(a) The Carrier shall maintain sufficient financial resources, facilities, providers, staff and other necessary resources to meet its obligations under this contract. If the OPM determines that the Carrier does not demonstrate the ability to meet its obligations under this contract, the OPM may notify the Carrier of the asserted deficiencies. The Carrier agrees that, within ten (10) working days following notification, it shall present detailed plans for correcting the deficiencies. These plans shall be presented in a form prescribed by the OPM. Pending submission or implementation of plans required under this Section, the OPM may institute action as it deems necessary to protect the interests of Members, including, but not limited to:

(1) Suspending new enrollments under this contract;

(2) Advising Enrollees of the asserted deficiencies and providing them an opportunity to transfer to another plan;

(3) Withholding payment of subscription income or restricting access to the Carrier's Letter of Credit account; or

(4) Terminating the enrollment of those Enrollees who, in the judgment of OPM, would be adversely affected by the deficiency.

(b) The Carrier agrees that failure to submit or to diligently implement plans which are required under this Section shall constitute sufficient grounds for termination of this contract pursuant to Section 1.15, *Renewal and Withdrawal of Approval.*

(c) Prior to taking action as described in paragraph (a) the OPM shall notify the Carrier and offer an opportunity to respond.

(d) The Carrier shall include the substance of this clause in the contract with its underwriter and substitute an appropriate term for "Carrier."

SECTION 1.13
INFORMATION AND MARKETING MATERIALS (JAN 1996)

(a) OPM and the Carrier shall agree upon language setting forth the benefits, exclusions and other language of the Plan and shall

certify to that language in the Certified Brochure Text (Appendix A of this contract). OPM, in its sole discretion, may order the Carrier to print and distribute the Certified Brochure Text, in a format and quantity approved by OPM. This formatted document is referred to as the FEHB brochure. The Carrier shall distribute the FEHB brochure to all Federal employees, annuitants, former spouses and former employees and dependents enrolled in the Plan. The Carrier shall also distribute the document(s) to Federal agencies to be made available to such individuals who are eligible to enroll under this contract. The Carrier may print additional FEHB brochures for distribution or its own use, but only in the approved format and at its own expense.

(b) Supplemental material. Only marketing materials or other supplemental literature prepared in accordance with FEHBAR 1652.203-70 (Section 1.14 of this contract) may be distributed or displayed at or through Federal facilities.

(c) Carrier certifications. The Carrier shall certify to OPM each year that the statement of FEHB benefits in the Certified Brochure Text included as Appendix A, is reflected, verbatim, in the FEHB brochure and, if the Carrier intends to have supplemental marketing materials distributed by Federal agencies, that the materials have been prepared in accordance with FEHBAR 1652.203-70.

(d) OPM may order the Carrier to prepare an addendum or reissue the FEHB brochure or any piece(s) of supplemental marketing material at no expense to the Government if it is found to not conform to the certifications described in paragraph (c) of this section.

SECTION 1.14
MISLEADING, DECEPTIVE OR UNFAIR ADVERTISING (JAN 1991) (FEHBAR 1652.203-70)

(a) The Carrier agrees that any advertising material, including that labeled promotional material, marketing material, or supplemental literature, shall be truthful and not misleading.

(b) Criteria to assess compliance with paragraph (a) of this clause are available in the *FEHB Supplemental Literature Guidelines* which are developed by OPM and should be used, along with the additional guidelines set forth in FEHBAR 1603.702, as the primary guide in preparing material; further guidance is provided in the NAIC *Rules Governing Advertising of Accident and Sickness Insurance With Interpretive Guidelines.* Guidelines are periodically updated and provided to the Carrier by OPM.

(c) Failure to conform to paragraph (a) of this clause may result in a reduction in the service charge, if appropriate, and corrective action to protect the interest of Federal Members. Corrective action will be appropriate to the circumstances and may include, but is not limited to the following actions by OPM:

(1) Directing the Carrier to cease and desist distribution, publication, or broadcast of the material;

(2) Directing the Carrier to issue corrections at the Carrier's expense and in the same manner and media as the original material was made; and

(3) Directing the Carrier to provide, at the Carrier's expense, the correction in writing by certified mail to all enrollees of the Plan(s) that had been the subject of the original material.

(d) Egregious or repeated offenses may result in the following action by OPM:

(1) Suspending new enrollments in the Carrier's Plan(s);

(2) Providing Enrollees an opportunity to transfer to another plan; and

(3) Terminating the contract in accordance with Section 1.15, *Renewal and Withdrawal of Approval.*

(e) Prior to taking action as described in paragraphs (c) and (d) of this clause, the OPM will notify the Carrier and offer an opportunity to respond.

(f) The Carrier shall incorporate this clause in subcontracts with its underwriter, if any, and other subcontractors directly involved in the preparation or distribution of such advertising material and shall substitute

"Contractor" or other appropriate reference for the term "Carrier."

SECTION 1.15
RENEWAL AND WITHDRAWAL OF APPROVAL (JAN 1991) (FEHBAR 1652.249-70)

(a) The contract renews automatically for a term of one (1) year each January first, unless written notice of non-renewal is given either by OPM or the Carrier not less than 60 calendar days before the renewal date, or unless modified by mutual agreement.

(b) This contract also may be terminated at other times by order of OPM pursuant to 5 U.S.C. 8902(e). After OPM notifies the Carrier of its intent to terminate the contract, OPM may take action as it deems necessary to protect the interests of Members, including but not limited to--
  (1) Suspending new enrollments under the contract;
  (2) Advising Enrollees of the asserted deficiencies; and
  (3) Providing Enrollees an opportunity to transfer to another plan.

(c) OPM may, after proper notice, terminate the contract at the end of the contract term if it finds that the Carrier did not have at least 300 Enrollees enrolled in its Plan at any time during the two preceding contract terms.

SECTION 1.16
SUBCONTRACTS (JAN 1991) (FEHBAR 1652.244-70)

(a) The Carrier shall notify the Contracting Officer reasonably in advance of entering into any subcontract or subcontract modification, or as otherwise specified by this contract, if both the amount of the subcontract or modification charged to the FEHB Program (in the case of community-rated carriers, applicable to the FEHB Program) exceeds $100,000 and is 25 percent of the total cost of the subcontract.

(b) The advance notification required by paragraph (a) of this clause shall include the information specified below:
  (1) A description of the supplies or services to be subcontracted;
  (2) Identification of the type of subcontract to be used;
  (3) Identification of the proposed subcontract and an explanation of why and how the proposed subcontractor was selected, including the competition obtained;
  (4) The proposed subcontract price and the Carrier's cost or price analysis;
  (5) The subcontractor's current, complete, and accurate cost or pricing data and Certificate of Current Cost or Pricing Data, if required by other contract provisions;
  (6) The subcontractor's Disclosure Statement or Certificate relating to Cost Accounting Standards when such data are required by other provisions of this contract; and
  (7) A negotiation memorandum reflecting--
    (i) The principal elements of the subcontract price negotiations;
    (ii) The most significant consideration controlling establishment of initial or revised prices;
    (iii) The reason cost or pricing data were or were not required;
    (iv) The extent, if any, to which the Carrier did not rely on the subcontractor's cost or pricing data in determining the price objective and in negotiating the final price;
    (v) The extent to which it was recognized in the negotiation that the subcontractor's cost or pricing data were not accurate, complete, or current; the action taken by the Carrier and the subcontractor; and the effect of any such defective data on the total price negotiated;
    (vi) The reasons for any significant difference between the Carrier's price objective and the price negotiated; and
    (vii) A complete explanation of the incentive fee or profit plan when incentives are used. The explanation shall identify each critical performance element, management decisions used to quantify each incentive element, reasons for the incentives, and a summary of all trade-off possibilities considered.

...

Case 1:00-cv-00463-SAS    Document 57-7    Filed 09/14/2005    Page 14 of 15

(c) The Carrier shall obtain the Contracting Officer's written consent before placing any subcontract for which advance notification is required under paragraph (a) of this clause. However, the Contracting Officer may ratify in writing any such subcontract. Ratification shall constitute the consent of the Contracting Officer.

(d) The Contracting Officer may waive the requirement for advance notification and consent required by paragraphs (a), (b) and (c) of this clause where the Carrier and subcontractor submit an application or renewal as a contractor team arrangement as defined in FAR Subpart 9.6 and--

(1) The Contracting Officer evaluated the arrangement during negotiation of the contract or contract renewal; and

(2) The subcontractor's price and/or costs were included in the Plan's rates that were reviewed and approved by the Contracting Officer during negotiation of the contract or contract renewal.

(e) Unless the consent or approval specifically provides otherwise, consent by the Contracting Officer to any subcontract shall not constitute a determination (1) of the acceptability of any subcontract terms or conditions; (2) of the allowability of any cost under this contract; or (3) to relieve the Carrier of any responsibility for performing this contract.

(f) No subcontract placed under this contract shall provide for payment on a cost-plus-a-percentage-of-cost basis. Any fee payable under cost reimbursement type subcontracts shall not exceed the fee limitations in FAR 15.903(d). Any profit or fee payable under a subcontract shall be in accordance with the provision of Section 3.7, *Service Charge.*

(g) The Carrier shall give the Contracting Officer immediate written notice of any action or suit filed and prompt notice of any claim made against the Carrier by any subcontractor or vendor that, in the opinion of the Carrier, may result in litigation related in any way to this contract with respect to which the Carrier may be entitled to reimbursement from the Government.

SECTION 1.17
NOVATION AGREEMENT (JAN 1996)

The agreement at FEHBAR 1642.1204 shall be submitted for approval to OPM when the Carrier's assets or the entire portion of the assets pertinent to the performance of this contract, as determined by the Government, are transferred.

SECTION 1.18
AGREEMENT TO RECOGNIZE CARRIER'S CHANGE OF NAME (JAN 1996)

The agreement at FEHBAR 1642.1205 shall be submitted for approval to OPM when the carrier changes its name and the Government's and Contractor's rights and obligations remain unaffected.

PART II - BENEFITS

SECTION 2.1
ENROLLMENT ELIGIBILITY AND EVIDENCE OF ENROLLMENT (JAN 1996)

(a) Enrollment.
(1) Each eligible individual who wishes to be enrolled in the plan offered by this Carrier shall, as a prerequisite to such enrollment, complete a Health Benefits Registration Form within the time and under the conditions specified in the regulations. The Government personnel office having cognizance over the Enrollee shall promptly furnish notification of such registration to the Carrier.
(2) A person's eligibility for coverage, effective date of enrollment, the level of benefits (option), the effective date of termination or cancellation of a person's coverage, the date any extension of a person's coverage ceases, and any continuance of benefits beyond a period of enrollment and the date any such continuance ceases, shall all be determined in accordance with regulations or directions of OPM given pursuant to chapter 89, title 5, United States Code.
(b) The Carrier shall, subject to the approval of the Contracting Officer, define an enrollment area. The Carrier may limit enrollment to individuals residing inside the approved enrollment area.
(c) The Carrier shall issue evidence of the Enrollee's coverage and furnish to the Enrollee copies of any claim forms as necessary.

SECTION 2.2
BENEFITS PROVIDED (JAN 1996)

(a) The Carrier shall provide the benefits as described in the Certified Brochure Text found in Appendix A.
(1) Benefits offered under this contract may be modified by the Carrier to permit methods of treatment not expressly provided for, but not prohibited by law, rule or Federal policy, if otherwise contractually appropriate, and if such treatment is medically necessary and is as cost effective as providing benefits to which the Member may otherwise be entitled.
(2) The Carrier may pay for or provide a health service or supply in an individual case which does not come within the specific benefit provisions of the contract, if the Carrier determines the benefit is within the intent of the contract, and the Carrier determines that the provision of such benefit is in the best interests of the Federal Employees Health Benefits Program.
(3) In individual cases, the Carrier, after consultation with and concurrence by the Member and provider(s), may offer a benefit alternative not ordinarily covered under this contract which will result in equally effective medical treatment at no greater cost. The decision to offer an alternative benefit is solely the Carrier's and is not subject to OPM review under the disputed claims process.
(b) In each case when the Carrier provides a benefit in accordance with the authority of (a)(1), (2) or (3) the Carrier shall document in writing prior to the provision of such benefit the reasons and justification for its determination. Such payment or provision of services or supplies while a valid charge under the contract shall not be considered to be a precedent in the disposition of similar cases.
(c) Except as provided for in (a) above, the Carrier shall provide benefits for services or supplies in accordance with Appendix A.
(d) The Carrier, subject to (e) below, shall determine whether in their judgment a service or supply is medically necessary or payable under this contract.
(e) The Carrier agrees to pay for or provide a health service or supply in an individual case if OPM finds that the Member is entitled thereto under the terms of the contract.

SECTION 2.3
PAYMENT OF BENEFITS AND PROVISION OF SERVICES AND SUPPLIES (JAN 1996)

(a) By enrolling or accepting services under this contract, Members are obligated to