

U.S. Department of Justice

Civil Division

---

Washington, D.C. 20530

August 9, 2005

UNDER SEAL

Timothy Keller, Esq.
Aschemann Keller
108 West Jackson
Marion, Illinois 62959

    Re: United States ex rel. Garner v. Anthem, et al.

Dear Tim:

    As I told you when you were here on May 19, 2005, we reached a tentative agreement to settle this matter with defendants for $1.5 million. At that time, you told me that $1.5 million was the amount that you had wanted to settle for, and that the proposed settlement was agreeable to the relator. You never indicated any need to consult with your client, nor did you impose any conditions on your agreement to the $1.5 million. The next morning, after you apparently were unable to extract the amount that you wanted from defendants for settlement of the relator's retaliatory discharge claim, your colleague, Dale Aschemann, informed me that you now found the proposed settlement unacceptable and would object to it. Attempting to link settlement of a retaliatory discharge claim with false claims allegations is not appropriate.

    In any event, we have now settled all terms with defendants and reached a final written settlement agreement, which we have submitted to the Court, along with a notice that we are dismissing the case. A copy is enclosed.

    We always have kept you apprised of the progress of the investigation, audit activities, and settlement negotiations in this matter, and have afforded the relator every opportunity to produce evidence that would support his allegations. You have had the opportunity to meet with and question both the auditor and investigator assigned to the case and to review relevant records provided by defendant.

**Exhibit C**

Now that we have reached a final agreement, we can inform you of its precise terms and explain the basis. The agreement releases, and the United States would dismiss with prejudice, only claims relating to AdminaStar PrintMail and Anthem Prescription Management ("APM"). The United States would dismiss the remainder of the relator's complaint without prejudice. As you know, the allegations regarding PrintMail concern the possible impermissible inclusion of PrintMail profit in charges passed on to the Federal Employee Benefits Program (FEBP"). The allegations regarding APM concern the supposed failure to pass on to the FEBP the full amount of drug rebates received. Although the agreement does not break down the settlement amount between the two issues, we would view some $922,000 of the amount as representing double the maximum potential single damages on the PrintMail issue and the remainder of the amount, $578, 000, going toward the APM issue.

This more than compensates for any inflated PrintMail charges and addresses the drug rebate issue, the only allegations in the relator's complaint that you seriously pursued, or that appeared to have any significant merit. As to PrintMail, it is not certain, of course, that the company's charges actually included impermissible profit. Defendants simply were unable to produce documentation of PrintMail's costs. To arrive at maximum potential single damages, we determined the total of all relevant PrintMail charges passed on to OPM, and estimated a 10% profit margin, or $461,000.

Although we have contended that not ensuring that charges from a related entity, such as PrintMail, were passed on at cost constituted recklessness, defendants raised the colorable argument that the commercial price exception to the related entity rule, FAR § 31.205-26(c), applied, allowing the inclusion of profit. The related entity rule generally requires that costs of related entities be billed to the government at cost. There is an exception, however, where the contractor typically prices inter-organizational transfers at other than cost for commercial work. In any event, despite this available defense, defendants are paying us double the amount of any PrintMail profit that they may have passed on to OPM.

With regard to the drug rebates, there is no evidence of a deliberate effort to exclude any of the mail-order drug rebates, approximately $400,000, only poor accounting. Moreover, there was no net loss to OPM because defendants also excluded the costs related to drug rebates, resulting in no net loss to OPM. If anything, relator's pursuit of this issue uncovered potential claims against OPM by defendants. The settlement, in any event, provides for payment in excess of the excluded rebates.

Accordingly, you should consider whether you really want to renege on your agreement to the $1.5 million figure. Given that you previously agreed to that number, and that your initial and only settlement demand to defendants was merely for $2,050,000, it is difficult to see what basis you would have for an objection.

-3-

    In addition, as I have told you, the relator's status in this case is dubious, at least as to the PrintMail allegations, because there was a previously-filed *qui tam* suit that raised the same allegations of improper inclusion of PrintMail profit that are at issue here and led to the majority of the recovery in this case. We provided you with a copy of the complaint in that first-filed *qui tam* suit, *United States ex rel. Calabrese v. AdminaStar Federal*, (W.D. Ky.), in September, 2001.

    If you have any further questions concerning the settlement, please contact me. If you are willing to forego any challenge to the settlement, we can then discuss a possible relator's share.

                                  Yours truly,

                                    STANLEY E. ALDERSON
                                    Trial Attorney
                                  Commercial Litigation Branch
                                      Civil Division

cc: Barbara Duncombe, Esq.
    Ken Affeldt. Esq.