Case 1:00-cv-00463-SAS    Document 65-11    Filed 11/14/2005    Page 1 of 7

jensen117

```
 1
 2                UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
 3                       WESTERN DIVISION
 4
 5   THE UNITED STATES OF AMERICA,   )
     EX REL., ANDREW M. GARNER, III, )
 6   AND ANDREW M. GARNER, III,      )
     INDIVIDUALLY,                   )
 7                                   )
              Plaintiffs,            )
 8                                   )
                -vs-                 ) CIVIL ACTION NO.
 9                                   ) 1:00CV463
     ANTHEM INSURANCE COMPANIES, ET  )
10   AL.,                            )
                                     )
11            Defendants.            )
12
13
14           DEPOSITION OF MICHAEL E. JENSEN
15
            The deposition upon oral examination of
16   MICHAEL E. JENSEN, a witness produced and sworn
     before me, Tamara J. Brown, CSR, RMR, CRR, Notary
17   Public in and for the County of Marion, State of
     Indiana, taken on behalf of the Plaintiffs, at the
18   offices of Baker & Daniels, 300 North Meridian
     Street, Indianapolis, Marion County, Indiana, on the
19   7th day of November, 2005, pursuant to the Federal
     Rules of Civil Procedure with written notice as to
20   time and place thereof.
21
22   _____
     Connor + Associates, Inc.
23   1650 One American Square
     Indianapolis, IN 46282
24   (317)236-6022
25
                                                    2


 1                   A P P E A R A N C E S
 2   FOR THE PLAINTIFF(S):
 3        Mr. Timothy Keller
          ASCHEMANN KELLER, LLC
                      Page 1
```



EXHIBIT F

jensen117

```
15      other?
16   A  No.
17   Q  Did you think it was appropriate?
18   A  I didn't speculate on that.
19   Q  Were you aware that Mr. Garner, in 1998, had
20      alleged through his attorney that he had relayed
21      compliance issues to you and you had failed to
22      act upon them?
23   A  No.
24   Q  I'm handing you what has been marked as
25      Plaintiff's Exhibit 20, and I'd ask that you
                                                          150
            R O U G H   D R A F T

1       take a look at it.
2           (Plaintiff's Exhibit Number      was
3       marked for identification.)
4    A  Okay.
5    Q  Have you ever seen this document before?
6    A  This was one of the documents that I saw a week
7       ago at Mr. Dyer's office.
8    Q  Prior to that time, Mr. Jensen, do you recall
9       ever seeing this document?
10   A  No.
11   Q  Now that we've went through the deposition, do
12      you recall, or we're proceeding with the
13      deposition, do you recall seeing any other
14      documents beyond what you have listed previously
15      that you have reviewed in preparation for this
16      deposition?
17   A  I'm sorry, I can't remember the extent of the
18      documents that I reviewed at Mr. Dyer's office
19      last week.
```

Page 126

jensen117

```
20  Q   Do you ever recall Mr. Garner expressing concern
21      to you about the allocation of expenses relating
22      to the Federal Dental Blue product?
23  A   No, I don't.
24  Q   Do you know what the Federal Dental Blue project
25      was?
```

                                                                151
                        R O U G H   D R A F T

```
 1  A   Yes.
 2  Q   What was it?
 3  A   It was a program to provide dental benefits to
 4      Federal Employee Program in the state of
 5      Kentucky and it enrolled a small amount of our
 6      membership in Kentucky.
 7  Q   Was there a private component to the FDB?
 8  A   I'm not sure what you mean.
 9  Q   Was there, could a member purchase a an enhanced
10      benefit under the, that was sold by Anthem, to
11      expand the amount of dental care beyond what was
12      offered in connection with the FEP program?
13  A   Yes.
14  Q   Do you recall who serviced that product line in
15      1997 and 1998?
16  A   I think that was done by Delta Dental.
17  Q   What about the marketing of that product?
18  A   I think information would have been provided by
19      that product by the field service reps in
20      Kentucky along with their FEP information.
21  Q   Would that include Theresa Weed?
22  A   I'm not sure exactly of the timing but at one
23      time point in time Theresa Weed was a field
24      service rep in Kentucky.
```

Page 127

jensen117

25  Q   Was there a separate cost center that marketing

152

ROUGH   DRAFT

1       reps in Kentucky utilized to expense separately
2       the marketing expenses associated with this
3       private product?
4   A   No, there was not a separate cost center but we
5       made several allowances to allow for the
6       separation of federal dental Plu from their reg
7       FEP work.
8   Q   Can you explain that, what type allowances?
9   A   When I was still in the financial area, national
10      accounts finance working FEP at Governor's Hill
11      in Cincinnati we were sufficient to control and
12      performance review which was a regularly
13      schedule review process the FEP director's
14      office conducts.
15          As part of that process they brought to my
16      attention that costs for Federal Dental Blue had
17      been included in earlier years in our cost
18      filings for the service benefit plan in
19      Kentucky.
20          Subsequent to Frank Ray, the doctor's
21      office -- R-A-Y-O, when Frank brought that to my
22      attention we created a prior period adjustment
23      to return part of the money that had been
24      charged to the service benefit plan in Kentucky
25      to OPM, to the doctor's office to OPM and then

153

ROUGH   DRAFT

1       made subsequent allowances since that time,
2       either on a membership allocation basis or

```
                                    jensen117
 3       actually created a time sheet where the field
 4       service reps could mark off what portion of
 5       their day was sent to, spent on Federal Dental
 6       Blue.
 7   Q   When was this audit with Frank?
 8   A   Frank Rayo?
 9   Q   Rayo.
10           MR. DYER:  Objection, misstates his
11       testimony.  Could we hear the question back,
12       please?
13           MR. KELLER:  Let me rephrase the question.
14   Q   When did the discussion with Frank Rayo occur?
15   A   I believe that occurred in 1996 because I was
16       still out at Governor's Hill at the time I
17       remember working with Frank out at Governor's
18       Hill.
19   Q   When were the separate time sheets instituted?
20   A   In 1997.
21   Q   The separate time sheets for the marketing
22       representatives instituted?
23   A   In 1997.
24   Q   Was this ever an issue that Mr. Garner discussed
25       with you?
                                                      154
                    R O U G H   D R A F T

 1   A   Not that I can recall.
 2   Q   The Kentucky marketing representatives were his
 3       subordinates; were they not?
 4   A   At a certain point of time they began reporting
 5       to him, before the merger they reported to
 6       Nanette Hayes in Indiana and then for a certain
 7       time after the merger they continued to report
```

jensen117

```
 8       to Annette Hayes who is the marketing manager
 9       for Indiana and Kentucky.  I think my report on
10       deleted claims mentioned an Indiana/Kentucky
11       manager.  That would have been Nanette Hayes.
12   Q   Mr. Garner at that point was the director of
13       marketing for the FEP program; is that correct?
14   A   I'm not sure.  He may have been manager of
15       marketing in Ohio at that point in time.  At a
16       certain point in time, Jim became the director,
17       and I'm not sure of the date of that.  It would
18       have been no later than Plaintiff's Exhibit 18.
19   Q   You indicated this was sent to Mr. Garner
20       because he was a director; is that correct?
21   A   That would be my understanding, since the other
22       two folks on there are directors.
23   Q   Its your understanding as of at least August 26,
24       1997, Mr. Garner was a director?
25   A   I think that conclusion could be drawn but I'm
```
                                                              155
                        ROUGH    DRAFT

```
 1       not sure, again, of the exact date that he
 2       became the director.
 3   Q   If Mr. Garner had been the director over the
 4       Kentucky marketing representatives at the time
 5       the issue was brought to you about whether or
 6       not costs associated with marketing the private
 7       dental plan had been allocated to the FEP
 8       program; is that the type of issue you would
 9       have relayed to him or made him aware of?
10           MR. DYER:  Objection, calls for
11       speculation, object to the form.
12   A   At the time of the audit, this control and
```

```
                              jensen117
13      performance review, I guess was the correct
14      name, I was a senior financial analyst working
15      for our National Business Division and
16      participated in that control and performance
17      review in that capacity, and any findings of
18      that I would have made my boss aware, Jan Hakes,
19      and that was how the communication would have
20      taken place to Kathy Hinkle on any findings from
21      that report.
22   Q  Turning back to Plaintiff's Exhibit 20,
23      Mr. Jensen, I would like to draw your attention
24      to the second paragraph paragraph.
25   A  Yes.
                                                    156
                    R O U G H    D R A F T

 1   Q  Have you reviewed that paragraph?
 2   A  Yes.
 3   Q  Do you recall whether or not Mr. Garner had
 4      discussions with you one week prior to his
 5      termination regarding disclosing improprieties
 6      that he believed occurred?
 7   A  That discussion did not occur.  That did not
 8      occur.
 9   Q  Mr. Jensen, a lot of the questions that we've
10      had today and your responses have rightfully
11      reflected the passage of time and your
12      difficulty recalling specifics; would that be a
13      fair statement?
14   A  I think there's a mixture of specifics I have
15      been able to recall and some things that I do
16      not recall.  So I can't say that you could
17      characterize it one way or the other.
```