FILED
Jeffrey A. Apperson, Clerk
SEP 15 1999
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| UNITED STATES, ex rel. <br> GARY CALABRESE, <br><br> Plaintiffs, <br><br> v. <br><br> ADMINASTAR FEDERAL, <br><br> Defendant. | Civil Action No. 3:99CV-599-S <br><br> **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)(2)** <br><br> **DO NOT PLACE IN PRESS BOX.** <br> **DO NOT RECORD ON PUBLIC ELECTRONIC DOCKET.** |

* * * * * * * * * * * *

## CIVIL FALSE CLAIMS ACT COMPLAINT

### Demand for Jury Trial

Plaintiff-Relator Gary Calabrese ("Relator"), brings this qui tam action in the name of the United States of America, against defendant AdminaStar Federal ("AdminaStar" or "Defendant"). This is an action to recover damages and civil penalties from false statements and claims made or presented by the defendants in violation of the False Claims Act.

### JURISDICTION AND VENUE

1.  This action arises under 31 U.S.C. § 3729 et seq., known as the "False Claims Act". The False Claims Act provides that any person who knowingly, or with deliberate ignorance or reckless disregard for the truth, submits a false or fraudulent claim to the United States for payment or approval, is liable for a civil penalty of not less than $5,000 and not more than $10,000 for each claim, plus up to three times the amount of damages sustained by the Government because of the false claim. The Act allows any person having knowledge of a false

EXHIBIT J

or fraudulent claim against the Government to bring an action in Federal District Court on behalf of the United States and to share in any recovery.

2. Based on the provisions of the False Claims Act, Relator seeks through this action to recover damages and civil penalties arising from false and fraudulent claims submitted by AdminaStar to the Government under the Medicare program.

3. Jurisdiction over this action is conferred on this Court by 31 U.S.C. § 3732(a) and under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because AdminaStar may be found, resides, and does business within this District, and many of the acts which are the subject of this Complaint occurred in this District.

5. This Court has personal jurisdiction over defendant pursuant to 31 U.S.C. § 3732(a).

## PARTIES

6. The relator, Gary Calabrese, is a citizen of the United States and resident of the State of Maryland. Relator was employed by AdminaStar-Kentucky, and then AdminaStar (formed from the merger of AdminaStar-Kentucky, Indiana, and Ohio), Anthem, in several key positions beginning 1994 through March, 1998, including, as Vice President for Operations of AdminaStar-Kentucky, Executive Director of Operations for AdminaStar, and Executive Director of Appeals and Overpayment Recoveries for AdminaStar. Through his employment, Relator acquired direct and independent knowledge of defendant's statutory violations, and has voluntarily provided to the Government information on which the allegations set forth in this complaint are based. Relator is the "original source" of the information contained in the complaint within the meaning of 31 U.S.C. § 3730(e)(4)(B). As required under the False Claims

Act, 31 U.S.C. § 3730(a)(2), Relator has provided to the Attorney General of the United States and the United States Attorney for the Western District of Kentucky a statement of all material evidence and information related to the complaint and otherwise has disclosed to the United States, prior to filing this Complaint, facts material to the causes of action herein, and provided to the United States pertinent documents. Relator's written disclosure statement further supports the existence of the false claims by defendant.

      7.      Defendant AdminaStar is a corporation and subsidiary of Anthem Insurance Companies ("Anthem") through "AdminaStar, Inc.," and has its principal place of business at Indianapolis, Indiana. AdminaStar and its predecessors has held Medicare Fiscal Intermediary and Carrier Contracts since the inception of the Medicare program over 30 years ago. AdminaStar during the time covered by this complaint, at least 1994 to present, holds the Part B Medicare contracts for the states of Indiana and Kentucky, and is a Durable Medical Equipment contractor. It also administers the Fiscal Intermediary contracts as a subcontractor to Anthem. Anthem as a subcontractor to the Blue Cross and Blue Shield Association ("BCBSA"), holds the Part A agreements for Indiana, Kentucky, and Ohio. The purpose of AdminaStar, as directed by Anthem, is to perform administrative services for Medicare beneficiaries on behalf of the U.S. Department of Health and Human Services and the Health Care Financing Administration ("HCFA"). AdminaStar's revenue is derived solely from Medicare Fiscal Intermediary, Carrier, and related contracts. All carrier contracts are between HCFA and AdminaStar; the Fiscal Intermediary agreement is between BCBSA and Anthem, with the operation of the agreement subcontracted to AdminaStar.

## OVERVIEW

8. AdminaStar has violated the False Claims Act, 31 U.S.C. § 3730 et seq., because it has submitted claims to and received funds from the Medicare program which AdminaStar knows, knew, or absent reckless disregard should have known, were false claims. AdminaStar so violated Medicare laws and regulations in a number of ways detailed below, including:

(A) Pulling of correspondence in anticipation of Contractor Performance Evaluation Program ("CPEP") reviews by HCFA, in order to falsely improve those reviews;

(B) "Slamming" of phone calls in the Customer Service department, in order to falsely improve CPEP reviews;

(C) Falsifying information on Intermediary System Testing Performance ("ISTP") claims, in order to falsely improve CPEP reviews;

(D) Double-charging the Government for the processing of claims that AdminaStar prematurely rejected;

(E) Referring purchases to related entities, and passing off charges on other related entities, in a conflict of interest kept from the Government and falsely leading to increased charges to the Government;

(F) Overcharging the Government for data processing;

(G) Billing non-electronic claims as if they were in fact part of the Electronic Mail Claims (EMC) program, further falsely overcharging the Government for the processing of these claims; and

(H) Failing to collect certain over-payments.

## COUNT ONE

**31 U.S.C. § 3729 (a)(1)**
**False Claims Act – Knowingly Presenting a False or Fraudulent Claim**
**Falsification of CPEP Score Data**

9. Relator incorporates paragraphs 1 through 8 of this complaint as if fully set forth herein.

10. Throughout the time covered by this complaint, through at least 1998, AdminaStar was evaluated under the CPEP. Whether AdminaStar had a sufficiently CPEP score would determine whether AdminaStar would remain a contractor to HCFA (directly or through subcontract) for the processing of Part A and B Medicare claims.

11. AdminaStar and its predecessors had repeated difficulty maintaining the workload required to timely process and respond to written telephone inquiries, and written appeals, as set out in HCFA guidelines and CPEP standards. At the same time, however, AdminaStar compensated its managers with a bonus, paid when AdminaStar met CPEP standards; HCFA would pay this bonus as a reimbursement to AdminaStar. Therefore, AdminaStar by giving bonuses for the meeting of CPEP standards not only maintained its HCFA contracts, but also, incented its managers to falsify their reporting, in order to earn their bonus.

12. Periodically, HCFA auditors would review AdminaStar correspondence files in order to determine whether AdminaStar was meeting CPEP standards for timely response to correspondence. Beginning at least 1994, however, AdminaStar managers regularly would removed correspondence aged outside of acceptable standards, from the audit sample that the HCFA auditors would review. AdminaStar would then falsely represent to the HCFA auditors that the sample accurately represented AdminaStar's performance, in response to correspondence. This practice occurred at the AdminaStar Lexington, Kentucky location, and then by information and belief at its Louisville location.

13. Further, there were CPEP standards relating to the time that callers, with questions about their Medicare benefits, were placed on hold by AdminaStar personnel, who, as part of AdminaStar's contracts with the Government, were tasked with responding to those calls. In order to decrease the average per-call hold time, AdminaStar personnel, instructed by or

known to AdminaStar managers, would regularly hang up on ("slam") callers who had been on hold for some time, thereby decreasing average hold time for all calls (the hold time measured per call). AdminaStar then would falsely represent to HCFA auditors, in order to improve its CPEP scores, that the lowered hold time accurately represented the time that AdminaStar had taken to respond to a call, when AdminaStar knew that was not the case.

14. Further, as a part of HCFA's measurement of AdminaStar's performance, HCFA would have AdminaStar run sample claims through AdminaStar's system, in order to determine whether AdminaStar was properly processing claims of that type. HCFA called these claims Intermediary System Testing Performance ("ISTP") claims. In order to falsely improve performance, however, by information and belief, AdminaStar managers made manual corrections on ISTP claims result forms, to show falsely that AdminaStar had properly processed the claims, when in fact it had not. AdminaStar managers then presented HCFA auditors with these altered claims result forms, purporting falsely that they represented actual results from AdminaStar's claims system.

15. By virtue of the acts described above, defendant AdminaStar knowingly presented, or caused to be presented, to officers, employees, or agents of the United States Government false or fraudulent claims for payment or approval. Defendant AdminaStar knew that these claims for payment were false, fraudulent, or fictitious, or was deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of whether said claims were true or false. These claims were, therefore, false or fraudulent claims submitted for payment or approval to the United States in violation of 31 U.S.C. Section 3729(a)(1).

## COUNT TWO

### 31 U.S.C. § 3729 (a)(1)
### False Claims Act – Knowingly Presenting a False or Fraudulent Claim
### Double-Charging the Government for the Processing
### of Claims that AdminaStar Prematurely Rejected

16. Relator realleges and incorporates by reference paragraphs 1 through 15 <u>supra</u> as if fully set forth herein.

17. As early as 1994, AdminaStar had developed a computer program known as "ATP," to assist in the processing of claims. That computer program, however, was designed so that it would automatically, and without any human review, reject claims below a certain level. At the same time, the computer program would generate a claims rejection report, and also, the Government would be charged for the review of the claim. On receiving the rejected claim, claimants would re-submit the claim, usually with further information, and AdminaStar would again bill the Government for review of that claim, treating the review as a new review, rather than for a continued review of a rejected claim (for which AdminaStar already had billed the Government). Upon merger of the individual AdminaStar units to Administar Federal, Administar (Federal) began to utilize this program.

18. The result of the use of this ATP program was to bill the Government twice for the same clam, where, instead, there should have been only one billing. AdminaStar, however, falsely submitted claims for payment to the Government that re-submitted claims were in fact new claims, and that AdminaStar therefore should be paid again for reviewing those claims.

19. By virtue of the acts described above, defendant made, used or caused to be made or used, false records and statements to get the false and fraudulent claims allowed and paid.

20.     Defendant had actual knowledge that the duplicate charges that it submitted to the Government were false, or it was deliberately ignorant of and acted in reckless disregard of the fact that such information and documents was false, in violation of 31 U.S.C. Section 3729(a)(2).   Plaintiff, the United States of America, unaware of the falsity of the records and/or statements made, used, or caused to be made or used by AdminaStar, paid the false or fraudulent claims submitted to it.

### COUNT THREE

### 31 U.S.C. § 3729 (a)(1)
### False Claims Act – Knowingly Presenting a False or Fraudulent Claim
### Referring Purchases to Related Entities, and Passing Off Charges
### On Other Related Entities

21.     Relator realleges and incorporates by reference the allegations contained in supra paragraphs 1 through 20.

22.     HFCA's fiscal intermediary and carrier contracts with AdminaStar, which were substantially cost-plus contracts, required AdminaStar to avoid all conflicts of interest with related entities, including, the referral of purchases to related entities as the result of less than arms-length market transactions, and the passing off of charges onto related entities.  The purpose of this conflict of interest prohibition was to assure that the Government had to pay the lowest cost for services that it obtained under the contracts.

23.     AdminaStar, however, violated these conflict of interest provisions, falsely representing to the Government otherwise.

24.     First, AdminaStar formed, from its Indiana subsidiary, a separate, wholly-owned subsidiary corporation called "AdminaStar Print Mail" ("Print Mail").  Initially, the idea was that Print Mail would do business with other non-related entities, and thereby lower its costs so as to

be able to competitively charge AdminaStar for printing and mailing services. Print Mail, however, was unsuccessful in obtaining outside customers, and therefore was unable to (or did not) offer its services to AdminaStar. Nevertheless, AdminaStar continued to use Print Mail for all of its printing and mailing services, despite the fact that AdminaStar had obtained competitive bids that would provide the services at a lower cost. The Government paid the full, higher cost of the Print Mail services.

25. Further, AdminaStar also subcontracted certain of its data processing functions, to other AdminaStar entities. The cost charged for these functions was also above competitive cost and in violation of the conflict of interest provisions in the AdminaStar fiscal intermediary and carrier contracts with HCFA.

26. By virtue of the acts described above, defendant made, used or caused to be made or used, false records and statements to get the false and fraudulent claims allowed and paid. Defendant had actual knowledge that the charges that it submitted to the Government, for printing and mailing, and data processing, were imposed in violation of the conflict of interest provisions in the AdminaStar fiscal intermediary and carrier contracts with HCFA and therefore were not proper charges under those contracts, or was deliberately ignorant of and acted in reckless disregard of the fact that such charges were proper, in violation of 31 U.S.C. Section 3729(a)(2).

## COUNT FOUR

**31 U.S.C. § 3729 (a)(1)**
**False Claims Act – Knowingly Presenting a False or Fraudulent Claim**
**Falsely Charging the Government for Electronically-Submitted Claims**
**That Were Not Electronically-Submitted, or Failing to Control Paper Claims**

27.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

28.     From at least 1994 through 1998, AdminaStar was charged with processing claims from nursing centers. According to HCFA instructions, up to 75% of those claims had to be electronically submitted, or, AdminaStar would be penalized. At the time that this requirement was in force, however, only approximately 40% of claims by nursing centers to AdminaStar were electronic claims, the rest being submitted on paper. In order to meet the 75% requirement, AdminaStar therefore re-typed paper claims, making them to appear in its system as electronically-submitted claims, assigning each of the re-typed claims an electronic claims number. By doing this, AdminaStar falsely represented to the Government that it was meeting HCFA requirements, and the Government accordingly paid AdminaStar as if AdminaStar had properly been processing the required amount of electronic claims. The Government paid AdminiStar in full for this processing, following AdminaStar's false claims.

29.     Another way that AdminaStar attempted to meet the 75% requirement for electronic claims, was simply not keeping track of and controlling paper claims. For example, the AdminaStar Indiana division "met" its 1995 EMC goal of 75% electronic claims because it did not control, and therefore did not report the total volume of claims, all of the paper claims that it had received during the latter part of September 1995.

30.     By virtue of the acts described above, defendant made, used or caused to be made or used, false records and statements to get the false and fraudulent claims allowed and paid. Defendant had actual knowledge that the charges that it submitted to the Government were not proper charges, or, defendant was deliberately ignorant of and acted in reckless disregard of the fact that such charges were proper, in violation of 31 U.S.C. Section 3729(a)(2).

Plaintiff, the United States of America, unaware that the charges were improper, paid the false or fraudulent claims submitted to it.

### COUNT FIVE

### 31 U.S.C. § 3729 (a)(1)
### False Claims Act – Knowingly Presenting a False or Fraudulent Claim
### Falsely Representing that Overpayments Were Tracked and Collected

31.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32.     AdminaStar's responsibilities included the tracking and collection of overpayments from the United States to providers. Some time during at least 1996, the Kentucky AdminaStar Medicare Service Provider ("MSP") department discovered significant overpayments to certain beneficiaries, and provided information about this to AdminaStar including its Indiana MSP department. By information and belief, AdminaStar did not pursue these overpayments, or initiate a historical search of all paid claims associated with these MSP beneficiaries, and the overpayments therefore were not collected or collected promptly.

30.     Despite its failure to properly collect overpayments, however, AdminaStar falsely claimed to the United States that it was properly collecting overpayments. By virtue of such false claims, defendant made, used or caused to be made or used, false records and statements to get the false and fraudulent claims for work to recover overpayments allowed and paid. Defendant had actual knowledge that the charges that it submitted to the Government were not proper charges, or, defendant was deliberately ignorant of and acted in reckless disregard of the fact that such charges were proper, in violation of 31 U.S.C. Section 3729(a)(2). Plaintiff, the United States of America, unaware that the charges were improper, paid the false or fraudulent claims submitted to it.

**WHEREFORE**, Relator on behalf of himself and the United States of America, demands judgement against defendant AdminaStar as follows:

    A.    All Counts:

        (1)    Treble the amount of damages sustained by the United States, in an amount to be established;

        (2)    Assessment of a civil penalty of $10,000 for each false or fraudulent claim that the defendants made or caused to be made; and

        (3)    All other necessary and proper relief, including pre-judgment interest and costs of this action.

    B.    In response to all Counts, Relator also demands:

        (1)    Judgment against defendant for all costs incurred by Relator related to this action, including reasonable attorney's fees;

        (2)    That in the event that the United States of America proceeds with this action or otherwise settles these claims, that the Court award to Relator an amount of the proceeds of this action or settlement of claims not less than fifteen percent and as much as twenty-five percent as fair and reasonable compensation for its services in this suit, or such other amount as may be proper under 31 U.S.C. 3730(d), together with an amount of reasonable expenses necessarily incurred by relator, plus reasonable attorney fees and all costs and expenses which this court shall award against the defendants.

        (3)    That in the event that the United States of America does not proceed with this action, the Court award to Relator an amount of the proceeds of this action or settlement of claims of not less than twenty-five percent nor more than thirty percent as fair and reasonable compensation for its services in this suit, or such other amount as may be proper under 31 U.S.C. Sec. 3730(d), together with an amount of reasonable expenses and attorney fees, which this Court shall award against the defendants.

        (4)    The United States of America and Relator receive such other and further relief that this Court decides is just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff/Relator hereby demands trial by jury.

Dated: September 11, 1999.

*[signature]*

J. Stephen Simms
Greber & Simms
Suite 702
Twenty South Charles Street
Baltimore, Maryland 21201
Phone: (410) 783-5795
Facsimile: (410) 783-1368

Relator's Counsel

OF COUNSEL

Robin Page West
Law Offices of Robin Page West
Suite 703
Twenty South Charles Street
Baltimore, Maryland 21201
Phone: (410) 244-0400
Facsimile: (410 244-0402

W. Charles Bailey, Jr.
Greber & Simms
Suite 702
Twenty South Charles Street
Baltimore, Maryland 21201
Phone: (410) 783-5795
Facsimile: (410) 783-1368